**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phillip Simser, | No. CV-17-03196-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of the Social Security Administration, | |
| Defendant. | |

Plaintiff Phillip Simser seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security, which denied him child's disability insurance benefits and supplemental security income under sections 202(d), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the administrative law judge's ("ALJ") opinion contains reversible error and each of the credit-as-true requirements is met, the Court will remand for an award of benefits.

**I.  Background.**

Plaintiff is a 40 year old male who has never worked. A.R. 49, 182. On December 18, 2013, Plaintiff applied for supplemental security income, alleging disability beginning December 12, 2013. A.R. 182-90. On January 31, 2014, Plaintiff applied for child's disability insurance benefits, alleging disability beginning October 19, 1993. A.R. 193-96. On March 24, 2016, Plaintiff appeared and testified at a hearing before an ALJ. A.R. 38-55. A vocational expert also testified. *Id.* On

April 14, 2016, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. A.R. 20-30. This became the Commissioner's final decision when the Appeals Council denied review on July 19, 2017. A.R. 1-5.

## II. Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (internal citations and quotation marks omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.*

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears

the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). To establish disability, the claimant must show that (1) he is not currently working, (2) he has a severe impairment, and (3) this impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") prevents his performance of any past relevant work. If the claimant meets his burden through step three, the Commissioner must find him disabled. If the inquiry proceeds to step four and the claimant shows that he is incapable of performing past relevant work, the Commissioner must show at step five that the claimant is capable of other work suitable for his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ found that Plaintiff had not reached the age of 22 as of December 15, 1995, and had not engaged in substantial gainful activity since that date. A.R. 22.[1] At step two, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, cervical spondylosis, osteoporosis, and adjustment disorder with depressed and anxious mood. A.R. 22. The ALJ acknowledged that the record contained evidence of hypothyroidism, sleep apnea, and obesity, but found that these were not severe impairments. A.R. 23. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. A.R. 23-25. At step four, the ALJ found that Plaintiff had the RFC to perform light, unskilled work, and Plaintiff had no past relevant work. A.R. 25-29. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, he was able to perform occupations like housekeeping cleaner, fast food worker, and cashier. A.R. 29-30.

///

///

---

[1] To qualify for child's disability benefits, the claimant must have become disabled before age 22, and becomes eligible to receive benefits starting at age 18. *See* 42 U.S.C. § 402(d). The ALJ therefore considered Plaintiff's "implied" alleged disability onset date to be December 15, 1995, Plaintiff's 18th birthday. A.R. 20.

1 **IV. Analysis.**

Plaintiff argues that the ALJ erred by rejecting his symptom testimony and the opinions of his primary care physician, Dr. Jay Long, and rheumatologist, Dr. Ravi Bhalla. Doc. 14. Plaintiff's arguments focus on the ALJ's rejection of his physical limitations. *Id.* at 4 n.5.

**A. Symptom Testimony.**

In evaluating a claimant's symptom testimony, the ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the alleged symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptoms he has alleged, only that it could reasonably have caused some degree of the symptoms. *Id.* Second, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons. *Id.* at 1015. "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Id.* (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Plaintiff testified at the hearing that in tenth grade he began suffering from severe fatigue. A.R. 40. He began falling asleep in class, missing school because he could not wake up, and seeing doctors frequently. *Id.* He had to drop out of school. A.R. 41. He testified that his sleep schedule is "all over the place," and he has to take naps for one to two hours every day. *Id.* He generally wakes up, grooms himself, eats breakfast, watches television, listens to the radio, and then within hours has to go back to bed. A.R. 42. He has joint pain, muscle pain, neck spasms, and headaches that require him to "put a towel over [his] head and have no sound [or] light in the room," which can last up to six hours. A.R. 43. He testified that if he maintains his regular routine, he gets these headaches about once per month, but if he pushes himself to be more active, they can occur once or twice per week. *Id.* His fatigue and pain are also exacerbated if he does

activities like going to the store. A.R. 42. He can stand for about 20 to 30 minutes at a time and sit for 40 to 60 minutes. A.R. 44-45. He cannot use his hands consistently for repetitive motions because of joint pain, and he can lift 20 pounds. A.R. 46. He stopped driving when he was about 18 or 20 years old because he reacts slowly and "spaces out" due to his chronic fatigue. A.R. 47-48. Plaintiff testified that he has never looked for work because he "never felt [he] would have had the ability to" work. A.R. 49.

The ALJ found that Plaintiff's impairments "could reasonably be expected to cause some of the alleged symptoms[,]" but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" A.R. 26. The decision provides the following reasoning: "[T]he medical records did not support allegations of disabling conditions. Further, and most important, the medical evidence, as detailed below, did not support more restrictive functional limitations than those assessed herein." A.R. 26. The ALJ did not find that Plaintiff was malingering.

The ALJ then summarized various medical records. For example, the decision cites 65 pages of treatment records for the proposition that "[s]everal treatment notes reported complaints of pain but no specific clinical findings aside from tenderness." A.R. 26 (citing A.R. 396-460). In one record from August 1995, the notes say "[g]eneral exam ok." A.R. 418. But the same record states that Plaintiff had severe obesity, chronic fatigue, and fibromyalgia, and that Plaintiff reported that "any physical exertion causes mental and physical fatigue." *Id.* The ALJ did not explain why an "okay" general exam or notes reflecting mild clinical findings would be inconsistent with Plaintiff's testimony. As Plaintiff points out, such findings are "typical of a person suffering from fibromyalgia." Doc. 14 at 14 (citing *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) ("Typical symptoms include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue. What is unusual about the disease is that those suffering from it have muscle strength, sensory functions, and reflexes [that] are normal. Their joints appear

normal, and further musculoskeletal examination indicates no objective joint swelling.") (internal citations and quotation marks omitted)).

The ALJ also asserted that recent treatment notes showed "no more than updates for medication refills" and "no significant complaints [or] findings[.]" A.R. 26 (citing A.R. 498-99). The two pages of notes cited are difficult to read, but they do not appear to be comprehensive notes in which Plaintiff's complaints and the physician's findings would be recorded. The ALJ also cited various records showing "minimal degenerative dis[c] disease," "slight reversal of normal cervical lordotic curve," mostly "unremarkable physical examination findings," and osteoporosis. A.R. 26 (citing A.R. 352, 389, 454, 467). Finally, the ALJ cited a September 2014 consultative examination performed by Dr. Lise Labarre, in which she opined that Plaintiff's impairments caused no functional limitations. A.R. 26 (citing A.R. 477-83). Again, the ALJ provided no explanation as to why these records are inconsistent with specific alleged symptoms.

Although the ALJ summarized a number of medical records that might support his RFC determination, he failed to identify any specific inconsistency between the records and Plaintiff's testimony. The Ninth Circuit has held that "providing a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Furthermore, the ALJ's reasoning incorrectly required Plaintiff to substantiate the severity of his symptoms, which the ALJ had already determined could reasonably result from Plaintiff's medically determinable impairments. This too was error. "Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), as amended (Apr. 9, 1996).

The error is not harmless. The vocational expert testified that Plaintiff could not sustain work if he needed to rest two hours during the workday, missed two days of work

per month, or was off-task more than 10% of the workday.  A.R. 53.  The Court cannot conclude that the ALJ's rejection of Plaintiff's testimony did not affect the ultimate nondisability determination.

### B. Medical Evidence.

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work."  20 C.F.R. § 404.1527(d)(1).  But the Commissioner generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions.  § 404.1527(a)(2), (c).

In determining how much deference to give a physician's medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians.  *See Lester*, 81 F.3d at 830.  Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician.  *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence).

If a treating or examining physician's medical opinion is not contradicted by another doctor, the opinion can be rejected only for clear and convincing reasons.  *Lester*, 81 F.3d at 830.  Under this standard, the ALJ may reject a treating or examining physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings," *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004), or if there are significant discrepancies between the physician's opinion and her clinical records, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

When a treating or examining physician's opinion is contradicted by another doctor, it can be rejected for "specific and legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (internal citations and quotation marks omitted). To satisfy this requirement, the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). Under either standard, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

The ALJ assigned "great weight" to a non-examining agency physician's opinion that Plaintiff could perform light work, and assigned "little weight" to other agency consulting physicians who opined that Plaintiff had no severe physical impairments. A.R. 27 (citing A.R. 56-63, 66-71, 77-105). The ALJ gave "some weight" to examining physician Dr. Lise Labarre's opinion of no physical limitations. A.R. 28 (citing A.R. 477-83). And he assigned little weight to the opinions of Plaintiff's treating primary care physician and rheumatologist, Drs. Long and Bhalla. A.R. 28. Plaintiff argues that the ALJ failed to provide adequate reasons for discrediting these two opinions. Doc. 14 at 12-18.

### 1. Dr. Long.

Dr. Long began treating Plaintiff for pain, fatigue, fibromyalgia, depression, and anxiety at age 17. *See* Doc. 14 at 4. Dr. Long completed a functional assessment on May 20, 2015, in which he opined that Plaintiff could not perform full-time work on a consistent basis due to his chronic fatigue syndrome and fibromyalgia. A.R. 500-01. He opined that Plaintiff could sit less than two hours in a workday, stand or walk less than two hours, and carry or lift less than ten pounds. A.R. 500. Plaintiff could use his hands and feet less than occasionally, and reach, bend, or stoop less than occasionally. *Id.* Plaintiff's impairments caused severe pain, fatigue, and headaches (defined as off-task greater than 21% of an eight-hour workday). A.R. 501. And his medications caused

sleepiness and general weakness. *Id.* Dr. Long completed another functional assessment in February 2016 that found similar limitations. A.R. 504. Because the agency physicians opined to limitations that directly conflict with Dr. Long's assessments, the ALJ was required to provide specific and legitimate reasons to discredit Dr. Long's opinions.

The ALJ assigned little weight to Dr. Long's assessments "because they were not inconsistent with the findings of the record as a whole, including treatment notes that showed no significant findings but notes simply the claimant's complaints and notes regarding medications[.]" A.R. 28 (citing A.R. 396-460, 498-99). Presumably the ALJ intended to state that the findings were not *consistent* with the record as a whole. Even so, this is not a specific and legitimate reason because the ALJ provided no explanation, other than citing 67 pages of treatment notes. Moreover, that many of the treatment notes contain Plaintiff's complaints and medication regimen does not discredit Dr. Long's findings. Dr. Long states in his assessments that his opinions are based on objective, clinical, or diagnostic findings, and the ALJ's decision provides no legitimate basis to disbelieve this statement. Certainly the ALJ did not set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton*, 799 F.2d at 1408. The ALJ erred in rejecting the opinions of Plaintiff's long-term treating physician on the basis of one broad and conclusory reason.

This error is not harmless. The vocational expert testified that if Plaintiff were off-task more than 10% of the time or absent from work two or more days per month, he could not sustain work. A.R. 53. The ALJ's decision to discredit Dr. Long's opinion therefore could have affected the ultimate nondisability determination.

### 2. Dr. Bhalla.

Dr. Bhalla began treating Plaintiff in 2001. *See* Doc. 14 at 4. In June 2015, he submitted a letter stating that he treats Plaintiff for fibromyalgia, osteoarthritis, cervical spondylosis, and sleep apnea. A.R. 502. He opined that Plaintiff was unable to work due

to joint pain, stiffness, fatigue, muscle pain, and weakness. *Id.* He explained that the functional limitations resulting from arthritis are "related to a patient's level of pain and fatigue, which [Dr. Bhalla] cannot objectively measure." *Id.* But Plaintiff "ha[d] been consistent and believable in [his] reports of [his] level of pain, fatigue, and limitations on [his] daily function due to these symptoms." *Id.* He opined that Plaintiff was limited in his ability to grasp with his hands, lift and carry weights, stand, sit for prolonged periods, walk, reach, and bend. *Id.* But he explained that the "exact number of hours for sitting, standing and the amount of weight [Plaintiff could] lift is not in the scope of [his] practice," and "[p]rognosis of [Plaintiff's] diseases can be extremely variable, and there are frequent flare ups with changes in weather and stress." *Id.* Dr. Bhalla provided similar opinions in June 2009 and September 2010. *See* A.R. 326, 347. Because Dr. Bhalla's opinions were contradicted by the agency physicians' opinions, the ALJ was required to provide specific and legitimate reasons to discredit Dr. Bhalla's opinions.

The ALJ afforded Dr. Bhalla's opinions little weight because he "did not provide specific limitations" and "his assessments were inconsistent with the findings of his treatment records that showed tenderness to palpation throughout the body, but no swelling of the fingers or hands, normal motor strength, normal gait, and normal range of motion[.]" A.R. 28 (citing A.R. 307). The ALJ accurately portrayed the one treatment record he cited. It indicates that pain was elicited on palpation of Plaintiff's head, shoulders, buttocks, thighs, collarbone, and knees. A.R. 307. Plaintiff had no swelling in his fingers or hands, and normal range of motion, motor strength, and gait. *Id.* The "assessment" section of the same treatment record diagnoses Plaintiff with fibromyalgia, osteoarthritis, cervical spondylosis, and sleep apnea. A.R. 307-08. And the "plan" lists five prescription medications: hydrocodone, ketoprofen, nabumetone, Lyrica, and Prozac. A.R. 308. The ALJ did not explain why these findings at one visit would be inconsistent with Dr. Bhalla's functional assessments, especially given that Dr. Bhalla indicated that Plaintiff's impairments are characterized by frequent variations and "flare ups." A.R. 502; *see also Revels*, 874 F.3d at 656-57 (explaining that fibromyalgia is

characterized by widespread pain, but "the pain may 'fluctuate in intensity and may not always be present'").

The ALJ's other reason, that Dr. Bhalla did not provide specific limitations, is legitimate. Dr. Bhalla opined that Plaintiff has some limitation in grasping, lifting, carrying, standing, sitting, walking, reaching, and bending. But his assessments did not indicate the frequency or severity of these symptoms, such that the ALJ could compare them to other physicians' opinions or incorporate them into Plaintiff's RFC. Dr. Bhalla also stated that "[l]ooking at the overall picture I do feel that the patient is disabled for all competitive work purposes." A.R. 502. The ALJ was not required to accept this conclusion. *See* 20 C.F.R. § 404.1527(d)(1).

The Court finds that the lack of specific limitations is a specific and legitimate reason to discredit Dr. Bhalla's functional assessments. But the Court cannot conclude that this reason alone is sufficient to justify a blanket rejection of Dr. Bhalla's opinions, which corroborate Plaintiff's testimony and are based on 15 years of treating Plaintiff in Dr. Bhalla's field of specialty. *See Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("Rheumatology is the relevant specialty for fibromyalgia[,]" and "[s]pecialized knowledge may be particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community."). The ALJ's three sentences addressing Dr. Bhalla's opinions fall short of the "detailed and thorough" analysis the Ninth Circuit requires. *Cotton*, 799 F.2d at 1408. Defendant cites *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002), but in that case the treating physician's opinion was "brief, conclusory, and inadequately supported by clinical findings." The ALJ stated that Dr. Bhalla's opinions were inconsistent with certain treatment records, but as explained above, the ALJ failed to support this statement with substantial evidence in the record. The ALJ erred in rejecting Dr. Bhalla's opinions on the sole basis that his assessments did not provide specific functional limitations.

Again, the Court cannot conclude that this error is harmless. Although Dr. Bhalla did not provide specific limitations for the vocational expert to consider, his opinions

clearly indicate limitations inconsistent with the ALJ's RFC determination. The ALJ's decision to discredit Dr. Bhalla's opinions therefore may have affected the ultimate nondisability determination.

**V.  Remedy.**

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Under a "rare exception" to this rule, the Court may remand for an immediate award of benefits after conducting a three-part inquiry:

> The three-part analysis . . . is known as the "credit-as-true" rule. First, we ask whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Next, we determine whether there are outstanding issues that must be resolved before a disability determination can be made, and whether further administrative proceedings would be useful. When these first two conditions are satisfied, we then credit the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability.

*Id.* (internal citations and quotation marks omitted). *Leon* emphasized that the Court has discretion to remand for further proceedings even if it reaches the third step. *Id.* "Where an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* (internal quotation marks omitted).

Here, the ALJ erred in discrediting Plaintiff's symptom testimony and the opinions of his two treating physicians. Defendant does not identify, and the Court's review of the record does not reveal, any outstanding issue that must be resolved before a disability determination can be made. Plaintiff testified that his impairments caused severe fatigue requiring him to take naps for one to two hours every day, and that he had debilitating headaches that occurred weekly when he was active and could last up to six hours at a time. Dr. Long opined that Plaintiff had severe pain, fatigue, and headaches that would cause him to be off-task greater than 21% of a workday. The vocational expert testified

- 12 -

that if Plaintiff missed or was late to more than two days of work per month, was off-task more than 10% of the workday, or needed to take naps for two hours during the workday, he could not sustain work. A.R. 53-54. Even without crediting Dr. Bhalla's opinions, when Plaintiff's testimony and Dr. Long's opinions are credited as true, the record leaves no basis for the Court to find doubt as to disability.[2]

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for an award of benefits. The Clerk shall enter judgment accordingly and **terminate** this action.

Dated this 13th day of July, 2018.

_____
David G. Campbell
United States District Judge

---

[2] As the Court has stated on previous occasions, *e.g., Membrila v. Astrue*, No. CV-12-01565-DGC, 2013 WL 3064172, at *10 n.8 (D. Ariz. June 18, 2013), it disagrees with the credit-as-true rule. But the Court is bound by the overwhelming authority in this Circuit establishing the rule. *E.g., Leon*, 880 F.3d 1041; *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100-02 (9th Cir. 2014); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).